# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 8, 2001 Session

## JANET FAYE JACOBS, ET AL. v. ALVIN R. SINGH, M.D.

### Direct Appeal from the Circuit Court for Rutherford County
### No. 40785     Don R. Ash, Judge

---

### No. M2001-00697-COA-R3-CV - Filed January 11, 2002

---

Defendant physician appeals judgment for Plaintiffs in a jury trial of a medical malpractice action. Upon review of the record, we do not find that Plaintiffs' case was time barred pursuant to the statute of limitations. We find material evidence in the record to support the verdict and a jury finding that medical expenses incurred by the Plaintiff were necessary and reasonable. We therefore affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and BEN H. CANTRELL, J., joined.

C. Hayes Cooney, Nashville, Tennessee, for the appellant, Alvin R. Singh, M.D.

Jerry Scott and John L. Kea, II, Murfreesboro, Tennessee, for the appellees, Janet Faye Jacobs and Jimmy E. Jacobs.

### OPINION

This is an appeal from a medical malpractice action tried before a jury in November of 2000. This dispute stems from surgery performed by Dr. Alvin Singh on Mrs. Janet Faye Jacobs on December 23, 1996, when Dr. Singh performed a diagnostic laparoscopy and lysis of adhesions and a bilateral salpingo-oophorectomy, removing Mrs. Jacobs' ovaries, fallopian tubes and endometriosis. Over the course of the next year, Mrs. Jacobs did not improve, but continued to suffer nausea, vomiting, diarrhea and constant pain. During this period, Dr. Singh prescribed various pain medications, hormones and anti-depressants, but her condition did not improve. Mrs. Jacobs' last visit to Dr. Singh was in December of 1997, when Dr. Singh advised Mrs. Jacobs to consult the Vanderbilt Pain Clinic and gave her a refill prescription for pain medication.

Mrs. Jacobs consulted other physicians at the Pain Clinic, Baptist Hospital, Vanderbilt University and Southern Medical Center, and in April of 1998 consulted Dr. Robert Knight complaining of a high fever, blood in her urine and severe pain. Dr. Knight admitted Mrs. Jacobs to the hospital and performed an MRI, CT Scan and ultrasound. The CT Scan indicated an

abnormality, and on May 7, 1998, Dr. James Nunnery performed surgery to remove remnant ovarian tissue and adhesions around the remnant ovaries and sigmoid colon. Mrs. Jacobs has experienced no further problems since this surgery.

On October 15, 1998, the Jacobs filed suit against Dr. Singh for medical malpractice and loss of consortium, seeking compensatory and punitive damages. The case was heard by a jury on November 21, 22, and 27, 2000. Dr. Ralph Bard, a general surgeon from Tullahoma, Tennessee, testified as Plaintiffs' expert in this case. Dr. Bard testified that the remnant ovarian tissue removed by Dr. Nunnery constituted one-third to one-half of normal tissue, and that Mrs. Jacobs' pain was caused by this tissue and abdominal adhesions. He further testified that Dr. Singh's failure to remove this tissue fell below the applicable standard of care. Dr. James Daniell, an OB-GYN, testified as an expert witness on behalf of Dr. Singh. Dr. Daniell testified that adhesions around the colon and not the remnant ovarian tissue were the likely cause of Mrs. Jacobs' pain, and that these adhesions were beyond the scope of the surgery performed by Dr. Singh. He further testified that Dr. Singh's performance did not fall below that standard of care.

Dr. Singh moved for a directed verdict on the grounds that the claim was barred by the one year statute of limitations for tort actions, and objected to the testimony of Dr. Bard regarding Mrs. Jacobs' medical expenses. The trial court overruled the motion, but dismissed Mrs. Jacobs' claim for punitive damages for gross negligence. The jury found for the Plaintiffs, and awarded compensatory damages of $25,000 to Mrs. Jacobs. Judgment of $10,000 was awarded to Mr. Jacobs for loss of consortium. A motion for a new trial was overruled and this appeal followed.

*Issues*

The issues presented for appeal, as we perceive them, are:

(1) Whether the cause of action should have been dismissed pursuant to the statute of limitations codified at Tenn. Code Ann. § 29-26-116.

(2) Whether there was evidence that the medical expenses incurred were reasonable and necessary.

(3) Whether there was material evidence to support the verdict.

*Standard of Review*

This case was tried before a jury. Findings of fact by a jury shall be set aside only if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). Upon review, this Court will not reweigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Smith County v. Eatherly*, 820 S.W.2d 366, 369 (Tenn Ct. App. 1991). We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* This standard of review

safeguards the constitutional right to a trial by jury. *Miller v. Berry*, 457 S.W.2d 859, 862 (Tenn. Ct. App. 1970). Our review of the trial court's conclusions of law in a jury trial, however, is *de novo* upon the record, with no presumption of correctness. Tenn. R. App. P. 13(d); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 28 (Tenn. 1996).

### *Statute of Limitations*

The trial court denied Dr. Singh's motion for a directed verdict based on the statute of limitations, a motion which was made at the close of Plaintiffs' proof at trial and in the motion for a new trial. A directed verdict is appropriate when an issue is susceptible to only one conclusion. *Alexander v. Armentrout*, 24 S.W.2d 267, 271 (Tenn. 2000). If any material evidence is introduced on the issue, a directed verdict is not proper and the issue should be submitted to the jury. *Richardson v. Miller*, 44, S.W.2d 1, 30 (Tenn. Ct. App. 2000). In order to preserve the denial of a motion for a directed verdict made at the close of plaintiff's proof as an issue for appeal, the motion must be renewed at the conclusion of all proof. Tenn. R. App. P. 50.02. *Cortez v. Alutech*, 941 S.W.2d 891, 894 (Tenn. Ct. App. 1997). The motion "must be made at the conclusion of all the proof in order for it to be considered by the trial court on a post-trial motion and by this court on appeal." *Id.* (citing *Potter v. Tucker*, 688 S.W.2d 833, 835 (Tenn. Ct. App. 1985)). Upon review of the record, we find that Dr. Singh failed to renew his motion for a directed verdict at the conclusion of all the proof. However, Mrs. Jacobs does not contend that this constitutes a waiver of the issue, and we will therefore address it on the merits.

Mrs. Jacobs filed her claim against Dr. Singh on October 15, 1998. Dr. Singh contends that this claim should have been dismissed by the trial court pursuant to the one-year statute of limitations for malpractice actions as codified at Tenn. Code Ann. § 29-26-119. Dr. Singh submits that Mrs. Jacobs' cause of action accrued on February 7, 1997, the date on which she returned to his office complaining that her pain had not been alleviated, but that she felt worse than before the surgery. He argues that the statute was not tolled by the fact that Mrs. Jacobs remained under his care and that he continued to prescribe medications for her, but that her cause of action expired on February 6, 1998. Dr. Singh cites *Stanbury v. Bacardi*, 953 S.W.2d 671 (Tenn. 1997), for the proposition that Mrs. Jacobs' cause of action accrued on the February date, despite the fact that she remained under his care until December of 1997, and did not discover the remnant ovarian tissue or adhesions until May of 1998.

In *Stanbury*, the Tennessee Supreme Court held that the common law continuing medical treatment doctrine had been abrogated by the adoption of the discovery rule in Tennessee. *Stanbury*, 953 S.W.2d at 676. The discovery rule was judicially adopted in Tennessee in 1974 in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974). In *Teeters*, the Court held that "the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare should have discovered the resulting injury." *Tetters*, 518 S.W.2d at 517. The rule was subsequently adopted by the legislature in 1975 and is now codified at Tenn. Code Ann. § 29-26-116(a)(2). The code provides, in pertinent part:

(a)(1)The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.

(2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.

Tenn. Code Ann. § 29-26-116(a)(1)(2) (2000).

Before adoption of the discovery rule, medical malpractice actions were subject to the same one-year statute of limitations applicable to other negligence actions, which required that the claim be filed within one year of the date of the negligent act which caused the injury. *Stanbury*, 953 S.W.2d at 674. However, in *Frazor v. Osborne*, 414 S.W.2d 118 (Tenn. Ct. App. 1966), this Court extended the continuing tort principal to actions for medical malpractice, and held that a patient's cause of action did not accrue until after the termination of the patient-physician relationship. This became known as the continuing medical treatment doctrine. *Stanbury*, 953 S.W.2d at 675. The continuing medical treatment doctrine was not addressed by the Court in *Teeters*, which was decided six years after *Frazor*. *Id.* Cases decided subsequent to *Teeters* have applied the continuing medical treatment doctrine "*unless* the patient sooner knew or reasonably should have known of the injury or harm . . ." *Id.* (quoting *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 635 A.2d 394, 401 (1994); *Robinson v. Mount Sinai Medical Center*, 137 Wis.2d 1, 402 N.W.2d 711, 716 (1987)) (emphasis added). In *Stanbury,* the Court held that in light of the provisions of the discovery rule, the continuing medical care doctrine was "merely a particularized application of the discovery rule" that "outlived its necessity," and accordingly held the doctrine to be abrogated by the discovery rule. *Id*. at 676.

In the present case, therefore, the fact that Mrs. Jacobs remained in Dr. Singh's care did not toll the statute of limitations. Determining when the statute of limitations began to run involves consideration of when Mrs. Jacobs had sufficient knowledge that she had sustained an injury. *See id.* at 678. This inquiry does not require that Mrs. Jacobs had knowledge that "a breach of the appropriate legal standard" had occurred. *See Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). The statute of limitations begins to run when the plaintiff is "aware of the facts sufficient to put a reasonable person on notice that he has suffered an injury *as a result of wrongful conduct*," and the plaintiff knows the identity of the person who engaged in that conduct. *Roe,* 875 S.W.2d at 656-57 (emphasis added). This requires not only that the plaintiff be aware of the injury, but also that he be aware that the injury was caused by a wrongful act. *McClellan v. Stanley*, 978 S.W.2d 943, 945 (Tenn. Ct. App. 1998). The determination becomes one of when the patient had "sufficient information" to put him on notice that he has suffered an injury and that the injury was caused by a wrongful act. *Roe*, 875 S.W.2d at 658. This standard has evolved in light of the unique nature of the patient-physician relationship, which must be based on trust and confidence as a patient pursues his physicians' recommended course of treatment. *See McClellan*, 978 S.W.2d at 945. The determination of when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question for the trier of fact. *See, e.g., id.*

-4-

The trial court denied Dr. Singh's motion for a directed verdict based on the statute of limitations, a motion which was made at the close of Plaintiffs' proof at trial and in the motion for a new trial. A directed verdict is appropriate when an issue is susceptible to only one conclusion. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000). If any material evidence is introduced on the issue, a directed verdict is not proper and the issue should be submitted to the jury. *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). In this case, Mrs. Jacobs continued to experience pain after the initial surgery to remove her ovaries was performed by Dr. Singh in December of 1996. However, she was not aware that her ovaries had not been completely removed, and that the remnant tissue was a source of her pain, until surgery was performed by Dr. Nunnery in May of 1998. This situation is distinguishable from *Stanbury*, where the plaintiff consented to surgery on only one foot, surgery was performed on both feet, and following the surgery one of her toes did not lay flat but pointed straight up. *Stanbury v. Bacardi*, 953 S.W.2d 671, 673 (Tenn. 1997). After reviewing the record, the Court in *Stanbury* found that the plaintiff was aware of sufficient facts to put her on notice that she had suffered an injury as a result of wrongful conduct shortly after the surgery, when she realized surgery had been performed on both feet and that her toe was pointing straight into the air. *Id*. at 677.

Unlike the plaintiff in *Stanbury*, Mrs. Jacobs had no visual indication that she had suffered an injury as a result of the surgery, or that the surgery had been deficient in any way. She continued under Dr. Singh's treatment, and Dr. Singh continued to prescribe medications for her. Dr. Singh gave Mrs. Jacobs no indication that her pain might be caused by problems with the surgery, but advised her to consult the pain clinic, referred her to a psychiatrist, and continued to prescribe pain and hormone medications. This situation is more analogous to *McClellan*, where the plaintiff suffered permanent injury to his arm and hand as a result of improper positioning in the operating room. *McClellan v. Stanley*, 978 S.W.2d 943, 944 (Tenn. Ct. App. 1998). In *McClellan*, the defendant physician made continuing representations to his patient about his condition, and the patient was not told that his injury was permanent or that it was the result of deficiencies in the surgery. *Id.* As in *McClellan*, the question in this case is at what point in time would a reasonable person be put on inquiry? *See id.* at 945. In *McClellan*, this Court observed, "[i]f a patient is required to question his fiduciary's treatment and representations in order to protect the patient's rights, then the trust necessary between the doctor and patient for proper treatment and care is strained, at best, and at worst destroyed." *Id.* Given the necessity of this relationship of trust, plaintiffs are generally entitled to have the trier of fact resolve the issue of when a reasonable person would be put on notice that he should no longer have confidence in his physician. *See id.*

In this case, the question of when Mrs. Jacobs' should have suspected a deficiency in her surgery is not susceptible to only one conclusion. Thus a directed verdict would not have been appropriate. We accordingly affirm the trial court's denial of Dr. Singh's motion for a directed verdict based on the statute of limitations.

### *Evidence that the Medical Expenses Incurred Were Reasonable and Necessary*

Dr. Singh next contends that the trial court erred in overruling his motion for a directed verdict based on a lack of competent evidence regarding the reasonableness and necessity of Mrs. Jacobs' medical expenses. As we noted above, a directed verdict is appropriate only when it is clear that the evidence can sustain only one conclusion. If material evidence has been introduced to support an alternate conclusion, a directed verdict is not appropriate. ***Richardson v. Miller***, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). In a jury trial, the verdict will not be overturned unless there is no material evidence to support it. Tenn. R. App. P. 1(d).

In his brief, Dr. Singh refers us to two citations in the record for the proposition that there was no material evidence to support the jury's finding that Mrs. Jacobs' medical expenses were necessary and reasonable. Upon review of the testimony, we disagree with this contention. Dr. Bard testified that he believed Mrs. Jacobs medical expenses to be reasonable. Dr. Bard stated:

> The charges that are allowed for these various procedures pretty much with managed care now are set . . . they're set by the insurance companies based on the region that you live in. . . . they would allow the exact same charges in Murfreesboro that they would allow in Tullahoma . . . my experience is that these charges are exactly in line with what I see in Tullahoma.

Dr. Singh's testimony regarding the reasonableness of his own expenses supports the proposition that such expenses tend to fall within a general scheme of expenses for an area based on insurance codes. Based on this testimony, there is material evidence to support the jury finding that Mrs. Jacob's expenses were reasonable.

Dr. Singh further argues in his brief that the trial court erred in overruling his motion for a directed verdict because "[n]o one testified that the expenses were necessary and casually [sic] related to the matter herein involved." Mrs. Jacobs concedes that Dr. Bard did not directly state that the medical expenses were necessary, but cites ***Hudson v. Shorter***, No. 02A01-9709-CV-00232, 1998 WL 297506, at \*3 (Tenn. Ct. App. June 9, 1998) (***no perm. app. filed***), for the contention that we should consider the evidence as a whole to determine whether the medical expenses were necessary. In ***Hudson***, this Court held that while the testifying physician did not use the "magic language," his testimony taken as a whole indicated that the medical expenses were necessary. ***Hudson***, 1998 WL 297506, at \*3. We find likewise here. It is undisputed that Dr. Singh advised Mrs. Jacobs to seek the advice of other health care providers, that she did in fact seek such advice, that she underwent a second surgery by Dr. Nunnery, and that during the course of this surgery remnant ovarian tissue and adhesions were removed. We find it interesting that Dr. Singh questions the necessity of treatment by other health care providers which he advised Mrs. Jacobs to see. Read as a whole, the record contains material evidence to support a jury finding that such expenses were necessary.

### *Material Evidence to Support the Verdict*

In reviewing whether the evidence supports the verdict, this Court will not reweigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party and discard evidence to the contrary. *Smith County v. Eatherly*, 820 S.W.2d 366, 369 (Tenn Ct. App. 1991). We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* At trial, Dr. Bard testified that, in his opinion, the pain experienced by Mrs. Jacobs after the December 1996 surgery was caused by either abdominal adhesions or the ovarian remnants. He stated that he agreed with Dr. Singh's diagnosis regarding the original cause of Mrs. Jacobs' pain, and with the subsequent decision to remove her ovaries. It is undisputed that Dr. Singh failed to remove some of the ovarian tissue. Dr. Bard testified that based on Dr. Nunnery's pathology report, this tissue comprised a third to one-half of the ovaries. Since the surgery to remove this tissue and the adhesions, Mrs. Jacobs has been pain free. Dr. Bard stated, "I think it's more likely based on my knowledge and my experience that it was, in fact, the ovarian remnant or the remaining ovaries that was causing the pain." Expert medical testimony regarding the cause of an injury must be grounded in more than mere speculation. *Lindsey v. Miami Dev. Corp*., 689 S.W.2d 856, 862 (Tenn. 1985). However, when such testimony expresses a professional medical judgment that one cause is the most likely cause of the injury, that testimony should be admitted and its weight is to be determined by the jury. *Id*. In this case, the jury weighed the evidence and found Dr. Bard's testimony to be credible. Since the record contains material evidence to support the jury's finding, the judgment of the trial court is affirmed.

### *Conclusion*

In light of the foregoing, the judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to the appellant, Alvin R. Singh, M.D., and his surety, for which execution may levy if necessary.

_____
DAVID R. FARMER, JUDGE