IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief October 28, 2004

## NEERAJ CHOPRA v. U.S. PROFESSIONALS, LLC, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004949-00     Karen R. Williams, Judge**

_____

**No. W2004-01189-COA-R3-CV - Filed February 2, 2005**

_____

Defendants U. S. Professionals, LLC and Satya B. Shaw and Rajashree S. Shaw, individually, appeal the judgment of the trial court awarding Plaintiff Neeraj Chopra compensatory and punitive damages for breach of contract and intentional misrepresentation.  We affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Harold D. Mangrum, Memphis, Tennessee, for the appellants, U.S. Professionals, LLC, Satya B. Shaw and Rajashree S. Shaw.

John S. Richbourg, Memphis, Tennessee, for the appellee, Neeraj Chopra.

**OPINION**

In August 2000, Neeraj Chopra (Mr. Chopra) filed a complaint against U.S. Professionals, LLC ("USP") and Satya B. Shaw (Mr. Shaw), individually, alleging breach of contract and intentional misrepresentation and seeking compensatory and punitive damages.  Mr. Chopra amended his complaint in December 2000, adding Rajashree S. Shaw (Ms. Shaw) as a Defendant (Mr. and Ms. Shaw, collectively, will be referred to as "the Shaws").  In his amended complaint, Mr. Chopra asserted that, sometime prior to November 1998, Mr. Shaw, while in India, hired Mr. Chopra as a computer analyst on behalf of USP.   He asserted that Mr. Shaw promised him a salary of $42,000 and stated he would obtain the necessary visa required for professionals to enter the United States to perform professional services on a temporary basis.  Mr. Chopra further alleged that, in reliance on Mr. Shaw's promise, he rejected an offer of a position in the Indian army and accepted Mr. Shaw's offer.

In November 1998, Mr. Chopra traveled to the United Sates from India on an H-1B visa[1] issued by the Department of Immigration and Naturalization Services ("INS") upon application of Defendants Ms. Shaw and USP. However, notwithstanding their representations to the INS on their application for Mr. Chopra's H-1B visa, USP and the Shaws (collectively, "Defendants" or "Appellants") did not employ Mr. Chopra as a computer analyst at a salary of $42,000 per year. In his amended complaint, Mr. Chopra alleged that Mr. Shaw informed him that he would only employ Mr. Chopra as a cashier at less than minimum wage. Mr. Chopra alleged that he was paid a total of $600 in living expenses by Mr. Shaw and USP, and $1,000 by Mr. Shaw for working as a cashier in gas stations owned by Mr. Shaw. Mr. Chopra further submitted that, by law, USP or the Shaws were required to pay his travel expenses back to India in the event his employment was terminated for any reason.

Mr. Chopra prayed for compensatory damages of $109,639.75 in travel expenses and salary. He further asserted that USP is the alter ego of the Shaws, and that the Shaws were personally liable for the debts of USP. Mr. Chopra additionally prayed for punitive damages of $10,000,000.

The matter was tried before a jury in January 2004. The jury awarded a verdict in favor of Mr. Chopra and against USP and the Shaws individually. The jury awarded a verdict jointly and severally against USP, Mr. Shaw, and Ms. Shaw in the amount of $126,900 as compensatory damages for breach of contract and intentional misrepresentation. It further awarded a verdict for punitive damages against USP in the amount of $30,000, in the amount of $30,000 against Mr. Shaw, and in the amount of $30,000 against Ms. Shaw. The trial court denied Defendants' motion for a new trial and Defendants filed a timely notice of appeal to this Court.

### *Issues Presented*

Appellants raise the following issues for our review:

(1)  Whether the trial court erred in denying Appellants' motion to direct a verdict in Appellants' favor at the close of Appellee's proof;

(2)  Whether the trial court erred in denying Appellants' motion to direct a verdict in Appellants'[,] Satya Shaw and Rajashree Shaw,  favor at the close of all the evidence.

---

[1]H-1B is a nonimmigrant category set aside for foreign workers in "specialty occupations," particularly high-skilled workers. A foreign worker may travel to the United States under an H-1B visa to temporarily fill a position in a speciality occupation (although the position may be a permanent position). The foreign worker must have the qualifications necessary to undertake this occupation. Additionally, the sponsoring employer must file a labor condition application with the Department of Labor and classification in the H-1B category is possible only if the Secretary of Labor certifies to the Attorney General that the labor condition application has been filed. Austin R. Fragomen, Jr. and Steven C. Bell, *H-1B Handbook* §§ 1:1, 1:8 (West Group 2002); 8 U.S.C. § 1101 *et seq.*

### *Standard of Review*

Appellate review of a trial court's decision to grant a directed verdict is well-settled. A directed verdict is appropriate when the evidence is susceptible to only one conclusion. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653 (Tenn. Ct. App. 2002)(citing *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn.2000)). This conclusion, however, cannot be based on speculation, conjecture, or guesswork. *Id.* If reasonable persons could draw conflicting conclusions on issues of fact, the matter should go to the jury. *Id.* When deciding whether a trial court should have granted a directed verdict, we must take the strongest legitimate view of the evidence in favor of the opponent of the motion. *Id.* Further, we must allow all reasonable inferences in favor of the opponent of the motion and disregard all evidence contrary to the opponent's position. *Id.*

When a trial court's decision not to grant a directed verdict is predicated on a determination of a question of law, the determination of the question of law is subject to later review by the appellate court where the issue has been preserved for review in accordance with the Rules of Civil Procedure. *See Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 130-31 (Tenn. 2004). Our review of the trial court's determination on a question of law is subject to *de novo* review with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

On appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support the verdict. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 576 (Tenn. Ct. App. 2002); Tenn. R. App. P. 13(d). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Id.* We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.*

### *Analysis*

Appellants first assert that the trial court erred in not granting them a directed verdict because Mr. Chopra lacked standing to bring this cause of action. They contend that Mr. Chopra was an illegal alien as of April 2000 and that, under *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 122 S. Ct. 1275 (2002), an illegal alien has "no standing in any court in the United States."

As an initial matter, we note that Mr. Chopra entered the United States legally under an H-1B visa obtained by Appellants. Mr. Chopra's later illegal alien status resulted from Appellants' failure to fulfill their obligations under 8 U.S.C. §1182 to employ Mr. Chopra and pay him at the prevailing rate or, under 8 U.S.C. §1184(c)(5)(A), to pay for the reasonable costs of his return to India upon dismissal before the end of the period of authorized admission. We therefore find Appellants' reliance on Mr. Chopra's status as an illegal alien somewhat disingenuous. Be that as it may, we disagree with Appellants' contention that *Hoffman* stands for the proposition that Mr. Chopra had "no standing in any court in the United States" to bring this lawsuit.

In *Hoffman*, the United States Supreme Court reversed the decision of the National Labor Relations Board ("the Board") to award backpay to an undocumented alien who had never been legally authorized to work in the United States. *Hoffman*, 535 U.S. at 140. The defendant in *Hoffman*, Jose Castro (Mr. Castro), was a national of Mexico who entered that United States illegally and secured employment with Hoffman Plastic Compounds, Inc. ("Hoffman Plastics") in May 1988 by tendering the birth certificate of a friend born in Texas. *Id.* at 140-41. He also fraudulently used this birth certificate to obtain a California driver's license, a social security card, and subsequent employment. *Id.* at 141. In December 1989, Hoffman Plastics unlawfully terminated four employees, including Mr. Castro, "in order to rid itself of known union supporters." *Id.* at 140. Despite the fact that the terminations were in violation of § 8(a)(3) of the National Labor Relations Act (NLRA), the Supreme Court held that to permit an undocumented alien to recover backpay under the NLRA is foreclosed by federal immigration policy as expressed in the Immigration Reform and Control Act of 1986 (IRCA). *Id.*

*Hoffman* is inapplicable to the case at bar. First, *Hoffman* cannot be read to stand for the proposition that an illegal alien has *no* standing in *any* court in the United States for any reason. Even the broadest reading of *Hoffman* could not suggest such a conclusion. *See, e.g., Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp.2d 1056 (N.D. Cal. 2002)(holding: undocumented alien not precluded from bringing cause of action under Fair Labor Standards Act); *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233 (Tex. Ct. App. 2003)(holding: lack of immigration work authorization does not preclude recovery for lost earning capacity under state law). The *Hoffman* court did not hold that the plaintiff in *Hoffman* had no standing. Rather, it determined that the remedy of backpay was not available in a lawsuit brought under the NLRA to an undocumented alien employee whose employment was illegally obtained in violation of the IRCA. The *Hoffman* court did not foreclose "'traditional remedies' sufficient to effectuate national labor policy regardless of whether the 'spur and catalyst' of backpay accompanies them." *Hoffman*, 535 U.S. at 152 (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 904 (1984)).

Second, *Hoffman* was a case requiring a delicate balance between United States immigration law and labor law. The *Hoffman* court determined that permitting recovery under the NLRA for pay which would have been obtained illegally but for an employer's violation of the NLRA contravened the immigration policies set-forth by Congress in the IRCA. The *Hoffman* court observed:

It (the IRCA) thus prohibits aliens from using or attempting to use "any forged, counterfeit, altered, or falsely made document" or "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States. §§ 1324c(a)(1)-(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 U.S.C. § 1546(b). There is no dispute that Castro's use of false documents to obtain employment with Hoffman violated these provisions.

Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit

congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations. The Board asks that we overlook this fact and allow it to award backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud.

*Id.* at 148-49. The *Hoffman* court held :

We find, however, that awarding backpay to illegal aliens runs counter to policies underlying IRCA, policies the Board has no authority to enforce or administer. Therefore, as we have consistently held in like circumstances, the award lies beyond the bounds of the Board's remedial discretion.

. . . .

What matters here . . . is that Congress has expressly made it criminally punishable for an alien to obtain employment with false documents. There is no reason to think that Congress nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities. Far from "accommodating" IRCA, the Board's position, recognizing employer misconduct but discounting the misconduct of illegal alien employees, subverts it.

*Id.* at 149-50.

Unlike *Hoffman*, the case now before this Court is not one in which the plaintiff/employee seeks to subvert the IRCA. Nor is it a case brought under the NRLA. Rather, this is an action for breach of contract and intentional misrepresentation brought by a foreign national who entered the United States legally, was legally entitled to work in the United States pursuant to an H-1B visa, and who, but for Appellants' actions, would have remained legally entitled to employment during the period for which he sought damages. Indeed, to deny Mr. Chopra standing would contravene United States immigration policy by permitting, if not encouraging, unscrupulous employers to fraudulently obtain H-1B visas to employ foreign nationals at less than minimum wage, as was the case here. Moreover, Appellants do not argue that this lawsuit is somehow preempted by the holding in *Hoffman*, and we find nothing in Tennessee law which would bar Mr. Chopra's action for breach of contract and intentional misrepresentation.

Appellants next assert the trial court erred by failing to grant a directed verdict holding that Mr. Shaw and Ms. Shaw were not individually liable for the obligations of USP. The determination of whether the corporate veil should be pierced and individuals held liable for obligations of the

corporate entity depends on the unique circumstances of each case and is within the province of the finder of fact. *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 795 (Tenn. 1996). The question of whether "a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of fact for the jury." *Id.* (quoting *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn.1985)). Taking the strongest view of the evidence in favor of the non-movant, Mr. Chopra, and allowing all reasonable inferences in his favor, we cannot say the evidence in this case led to only one reasonable conclusion. Accordingly, we affirm the trial court's determination to deny Appellants' motion for directed verdict. Further, contrary to Appellants' assertion otherwise, upon review of the evidence we find material evidence to support the verdict of the jury.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellants, U. S. Professionals, LLC, and Satya B. Shaw and Rajashree S. Shaw, individually, and to their sureties, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE