IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 7, 2005

## KELLY K. HOUSTON v. ASIAN IMPORT AND MANUFACTURING GROUP, INC.

**Appeal from the Circuit Court for Williamson County**
**No. II-98098     Donald P. Harris, Judge**

---

**No. M2003-02426-COA-R3-CV  - January 9, 2006**

---

This appeal involves an employment dispute.  Following his termination, the employee filed suit against his former employer in the Circuit Court for Williamson County alleging retaliatory discharge, breach of contract, and conversion.  The trial court directed a verdict for the employer at the close of the employee's case-in-chief, and the employee appealed.  We have determined that the trial court's decision to grant a directed verdict was proper.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Richard J. Braun and Patricia E. Crotwell, Nashville, Tennessee, for the appellant, Kelly K. Houston.

Kurt V. Beasley, Charles G. Blackard, III, and Jonathan Jackson Pledger, Brentwood, Tennessee, for the appellee, The Asian Import and Manufacturing Group, Inc.

**MEMORANDUM OPINION**[1]

**I.**

In May 1995, Stacy McGuire hired Kelly K. Houston to work for him at The Asian Import and Manufacturing Group, Inc. (A.I.M. Group) in Brentwood.  A.I.M. Group is in the business of supplying stationery and gift items manufactured in the Far East to customers in the United States and Germany.  A.I.M. Group's customers provide it the specifications or a sample product, and then

---

[1]Tenn. Ct. App. R. 10 provides:

The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

A.I.M. Group contracts with a factory and a shipping company to manufacture and ship the product to the customer's warehouse.

In May 1996, Mr. McGuire dispatched Mr. Houston to Hong Kong to open and staff an office there. On May 23, 1996, apparently prior to Mr. Houston's departure, Mr. McGuire and Mr. Houston signed an employment contract providing that A.I.M. Group would pay Mr. Houston $5,000 per year and that its "Hong Kong subsidiary" would pay him $49,400 per year.[2] After Mr. Houston arrived in Hong Kong, he set up the company's office and created the company's Hong Kong subsidiary. In Fall 1996, Mr. Houston was joined in Hong Kong by Keith Thode who had just gone to work for the company. Mr. Houston planned to train Mr. Thode and then return to the United States.

The relationship between Mr. McGuire and Mr. Houston became strained in late 1996. Mr. McGuire was concerned because the communications between the Hong Kong and Brentwood offices were not satisfactory to him and because he was receiving complaints from customers about the quality and timeliness of the goods being shipped. He was also concerned that Mr. Houston was exceeding his authority by contacting customers directly rather than leaving these contacts to Mr. McGuire and his staff in Brentwood. For his part, Mr. Houston was upset because he believed that Mr. McGuire was not living up to their promised compensation arrangement.

Eventually both Mr. Houston and Mr. Thode were asked to return to the company's Brentwood office for a meeting. They met separately with A.I.M. Group's attorney on February 13, 1997. During that meeting, Mr. Houston was provided with a notice of termination stating, in part:

> I will not attempt to specify each reason for your termination in that I do not believe that would serve any redeeming purpose. Generally, you have been deficient in maintaining the highest levels of quality control that falls under your direct responsibilities. These inadequacies have been costly both in terms of present dollars and in potential long-term losses due to questions of our dependability and our reputation. Additionally, your continued personal contact with our clients and manufacturers have been after repeated requests not to do so. Clearly, these acts can be defined as insubordinate and defying corporate authority. Your termination is "For Cause" as defined in your Employment Agreement.

Mr. Houston first filed a civil warrant against Mr. McGuire and his wife in the Williamson County General Sessions Court seeking damages under $15,000 for breach of contract. However, in February 1998, he filed suit in the Circuit Court for Williamson County seeking to recover compensatory and punitive damages for statutory retaliatory discharge, breach of contract, and conversion. The case went to trial on September 23, 2003 after mediation proved unsuccessful and

---

[2]This contract was between Mr. Houston and AffiliAsian USA, Inc. However, shortly after the parties signed the contract, the corporation changed its name to "The A.I.M. Group, Inc."

A.I.M. Group's motion for summary judgment was denied. Mr. Houston's evidence supporting this retaliatory discharge claim involved (1) a "double invoicing" arrangement with the landlord of the Hong Kong office to help the landlord avoid Hong Kong taxes, (2) the preparation of an incorrect W-2 for Mr. Houston's 1996 earnings, and (3) the handling of the freight charges for a particular customer's order. Following the close of Mr. Houston's case-in-chief, the trial court granted A.I.M. Group's motion for a directed verdict. The trial court entered its final order granting the directed verdict on September 23, 2003. Mr. Houston filed a timely notice of appeal.

## II.

Directed verdicts under either Tenn. R. Civ. P. 50.01 or 50.02 are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App. 1998). A case should not be taken away from the jury, even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a directed verdict, the reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999).

## III.

Mr. Houston's principal argument on appeal is that he presented sufficient evidence regarding each of his claims to survive a motion for a directed verdict and thus that the trial court erred by taking the case away from the jury. He insists that the record of the trial bears out his arguments despite the fact that he has provided this court with only a statement of the evidence, rather than a verbatim transcript of the proceedings. We have determined that the appellate record, such as it is, does not support Mr. Houston's claims.[3]

---

[3] Mr. Houston filed a statement of the evidence on December 29, 2003. A.I.M. Group filed an objection to this statement of the evidence and its own statement of the evidence on January 13, 2004. Neither party requested the trial court to resolve their dispute regarding the statement of the evidence in accordance with Tenn. R. App. P. 24(e), and so the record on appeal contains both statements of the evidence. Mr. Houston asserts that this court should be able to address the issues he raises on appeal "on the record as it stands now." A.I.M. Group responds that the statements of

(continued...)

One of the necessary ingredients of any statutory retaliatory discharge claim is proof that the employer was engaged in "illegal activities." Tenn. Code Ann. § 50-1-304(a) (2005); *Howard v. Life Care Ctrs. of Am., Inc.*, No. E2004-00212-COA-R3-CV, 2004 WL 1870067, at *3 (Tenn. Ct. App. Aug. 20, 2004) (No Tenn. R. App. P. 11 application filed); *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344-45 (Tenn. Ct. App. 1997) (reversing a judgment on an employee's retaliatory discharge claim because the employer's activities were not illegal). Tenn. Code Ann. § 50-1-304(c) defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Thus, we must determine whether any reasonable person could conclude, based on the evidence presented by Mr. Houston, that A.I.M. Group was engaged in illegal activities.

Mr. Houston first points to the arrangement that he devised and participated in that enabled A.I.M. Group's Hong Kong landlord to avoid Hong Kong taxation of the rental payments for the Hong Kong subsidiary's office. He insists that this arrangement was illegal because it enabled A.I.M. Group to inflate its expenses and thereby decrease its taxes. However, Mr. Houston failed to cite any legal authority for the proposition that labeling rent as some other sort of expense violates the criminal or civil code of Tennessee or of the United States. Accordingly, like the trial court, we find that this conduct does not support a retaliatory discharge claim.

Second, Mr. Houston insists that A.I.M. Group engaged in illegal activity by providing him a W-2 stating that he earned $16,500 in 1996 when his actual earnings were much higher. According to the record, Mr. Houston was actually employed by the Hong Kong affiliate of A.I.M. Group for more than one-half of 1996, and he received his compensation from this affiliate. A.I.M. Group asserted throughout the litigation that it was not required to include on Mr. Houston's W-2 the income Mr. Houston earned overseas while an employee of a foreign corporation. Because Mr. Houston presented no relevant evidence to dispute this claim, we find that his 1996 W-2 likewise does not support a claim for retaliatory discharge.[4]

Finally, Mr. Houston vaguely alludes to the manner in which A.I.M. Group charged one of its customers for freight for a particular order. According to Mr. Houston, the company charged the customer for the full amount of the freight bill even though the shipper had agreed to reduce it. Mr. Houston provided no details regarding this incident and failed to point to any state or federal law that A.I.M. Group violated if, in fact, it passed along an inflated shipping expense to one of its customers. Accordingly, this conduct does not provide a predicate for a retaliatory discharge claim.

---

[3](...continued)
the evidence "cannot reasonably be reconciled due to the variances between them." Both parties are responsible for providing this court with a record that contains a "fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(a).

[4]Mr. Houston presented evidence that he had notified the Internal Revenue Service of this discrepancy in 1997 but provided no evidence that the Internal Revenue Service took action against him or A.I.M. Group. He also presented evidence that the Tennessee Department of Employment Security took all his 1996 income into consideration for the purpose of his unemployment compensation claim. The actions of the Department of Employment Security have no legal bearing on Mr. Houston's assertion that A.I.M. Group somehow acted illegally in the preparation of his 1996 W-2.

-4-

## IV.

The only conclusion that a reasonable person could draw from this record is that A.I.M. Group terminated Mr. Houston's employment because of his job performance and the disputes over his compensation. Accordingly, the trial court properly granted the directed verdict at the close of Mr. Houston's case-in-chief.[5] We affirm the judgment and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Kelly K. Houston and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[5]Mr. Houston has not taken issue on appeal with the dismissal of his breach of contract and conversion claims. Accordingly, we do not address these claims.