# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 14, 2012 Session

## NORMAN HILL v. DANNY TAPIA, JR., ET AL.

### Direct Appeal from the Circuit Court for Davidson County
### No. 09C2957      Hamilton V. Gayden, Jr., Judge

---

### No. M2012-00221-COA-R3-CV - Filed December 21, 2012

---

This is a personal injury case resulting from an automobile accident. After the accident, Plaintiff/Appellant learned that he suffered from a degenerative disc disease, which required surgery. Appellant sued the two drivers involved in the accident for damages, which included his medical expenses for the disc surgery. At trial, Appellant's surgeon's deposition testimony was read to the jury, in which the surgeon testified that while the accident "aggravated" Appellant's existing condition, the treatment he received was not "causally related" to the accident. Appellant offered another expert's testimony, however, that did relate the treatment to the accident. At the close of proof, Appellant moved for a directed verdict on the issue of causation for his medical expenses, arguing that because the surgeon's testimony was contradictory, it was subject to the cancellation rule. The trial court denied the motion and sent the issue to the jury. The jury returned a verdict for Appellant, but in an amount that did not include the medical expenses he incurred to treat the degenerative disc disease. Appellant was also awarded discretionary costs. After a careful review of the record, we affirm.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

James B. Johnson and Lauren Paxton Roberts, Nashville, Tennessee, for the appellant, Norman Hill.

C. Benton Patton, Nashville, Tennessee, for the appellees, Danny Tapia, Jr., and Tabet Enterprises.

David S. Zinn and Raney B. Cronin, Brentwood, Tennessee, for the appellee, Estate of

Norma Aguila.

## OPINION

### I. Background

On September 9, 2008, Plaintiff/Appellant Norman Hill's vehicle was rear-ended by Defendant/Appellee Danny Tapia's vehicle. Mr. Hill was taken to the hospital by ambulance, where he was treated for neck pain. Mr. Hill was examined and scheduled for release. Before Mr. Hill was actually released, however, he rose to walk to the hospital restroom. At this time, he began experiencing pain in his hip and buttocks. The emergency room physician ordered X-rays, which showed no fractures and no abnormalities in his hip or pelvis other than an indication that Mr. Hill suffered from arthritis, a subset of degenerative disc disease, in his lower back. The emergency room physician prescribed pain medication and instructed Mr. Hill to use a combination of cold and heat in order to ease the pain. Mr. Hill was then released to go home.

Despite following the emergency room physician's advice, Mr. Hill's pain did not subside. Mr. Hill's wife was a nurse at the hospital where he was treated. Mrs. Hill informed the emergency room physician that her husband was still experiencing pain. Based on her report, the emergency room physician provided a referral to Dr. Carl Hampf, a neurosurgeon.

Mr. Hill was able to obtain an appointment with Dr. Hampf at the end of December 2008. At his first appointment, Mr. Hill and his wife filled out a New Patient Questionnaire ("the Questionnaire"), in which Mr. Hill noted that he had only been experiencing pain radiating down his leg to his foot for approximately one month. Mr. Hill stated in the Questionnaire that his pain was accident related. Mr. Hill further informed Dr. Hampf of the accident during his first appointment.

Dr. Hampf diagnosed Mr. Hill with spinal stenosis and prescribed physical therapy. When the therapy failed to alleviate the pain, Dr. Hampf then prescribed epidural shots. Mr. Hill received three epidural shots during his treatment, but none alleviated his pain long term. After the third epidural shot caused Mr. Hill considerable pain, rather than relief, Dr. Hampf recommended surgery. Ultimately, Mr. Hill consented to the surgery. Mr. Hill's medical expenses throughout his treatment totaled $107,411.00.

On August 24, 2009, Mr. Hill filed a complaint for damages against Mr. Tapia and his employer Defendant/Appellee Tabet Enterprises ("Tabet") (which is agreed by the parties to be essentially the same entity as Defendant/Appellee Ameritrains/Broyler Equipment). Mr. Hill later amended his complaint to add, as a defendant, the Estate of Norma Aguila ("the

Estate," and collectively with Mr. Tapia and Tabet, "Appellees").[1] In the complaint, Mr. Hill sought damages in an amount not less than $250,000.00. The matter was tried on October 31 and November 3, 2011.

At trial, Mr. Tapia admitted to hitting Mr. Hill with his truck, but explained that traffic on the interstate that day was forced to come to a full stop because of the actions of the driver of a Red Ford Focus, who stopped for no apparent reason in the middle of the interstate, causing Mr. Hill to stop abruptly and Mr. Tapia to hit him. Mr. Tapia took down the license plate number of the Ford Focus before coming to the aid of Mr. Hill. At trial, Normalinda Aguila Parochka testified that her mother, Norma Aguila, was the driver of the Red Ford Focus, whose license plate number Mr. Tapia had noted. At the time of the accident, Norma Aguila was eighty-three years old. At the time of trial, however, Norma Aguila has passed away due to causes unrelated to the accident.

The issues in this case specifically concern the causation testimony regarding Mr. Hills's medical expenses. Mr. Hill offered the testimony of his treating physician, Dr. Hampf. Dr. Hampf testified that Mr. Hill suffered from spinal stenosis prior to the September 9, 2008 accident. However, Dr. Hampf also testified that the spinal stenosis was aggravated by the accident, stating "Based on the records, it sounds like it was aggravated, yes." However, when later asked whether "the treatment [he] provided to [Mr. Hill] . . . [was] causally related to the motor vehicle accident" at issue in the case, Dr. Hampf replied, "No, I would not relate it to the motor vehicle accident.

Mr. Hill provided another witness, however, with a differing opinion. Dr. Sanat Dixit, who was qualified as an expert, testified that Mr. Hill's condition was aggravated by the accident and required surgery to alleviate. Specifically, Dr. Dixit testified that he agreed with Dr. Hampf's prior conclusion that Mr. Hill's spinal stenosis was aggravated by the accident and further opined that the accident caused Mr. Hill's condition to worsen. In addition, Dr. Dixit testified that all of Mr. Hill's $107,411.00 in medical treatment was reasonable and necessary as a result of the accident. Dr. Dixit further testified that Mr. Hill would likely require an additional surgery in the future. Other than the statements cited above by Dr. Hampf, the Appellees offered no expert testimony of their own regarding causation.

At the close of proof, Mr. Hill moved for a directed verdict on the issue of causation, arguing that, because Dr. Hampf's testimony was conflicting and vague, it should be stricken, and that the only remaining proof at trial regarding causation was the testimony of Dr. Dixit. The trial court denied the motion and sent the case to the jury. On November 3, 2011, the jury

---

[1] The amended complaint is not contained in the record; however, the parties do not dispute that the Estate was a properly named defendant in this case.

rendered a verdict for Mr. Hill finding Mr. Tapia 15% at fault and the Estate 85% at fault. The jury awarded Mr. Hill damages in the amounts of $3,386.55 for past medical care, $2,000.00 for past physical pain and suffering and $500.00 for past mental and emotional pain and suffering. No damages for future medical expenses were awarded. The Judgment was entered by the trial court on November 10, 2011. On December 2, 2011, Mr. Hill filed a Motion for Judgment in Accordance with a Motion for Directed Verdict or, in the alternative for a New Trial. The trial court denied the motion on January 3, 2012. On February 2, 2012, Mr. Hill filed a motion for Discretionary Costs. On March 28, 2012, the trial court awarded costs to Mr. Hill in an amount equal to the jury award of $5,685.55.

## II. Issues Presented

Mr. Hill raises the following issue for review:

1.      Whether the trial court erred in refusing to grant Mr. Hill's motions for judgment in accordance with a motion for a directed verdict on the issue of causation?[2]

In the posture of appellee, the Estate raises the following issues:

1.      Whether the trial court erred in concluding that Mr. Hill's motion for discretionary costs was timely filed?
2.      If Mr. Hill's motion for discretionary costs was timely filed, whether the trial court abused its discretion in awarding Mr. Hill discretionary costs in the amount of $5,685.55, an amount that did not relate to costs actually proven by Mr. Hill but was awarded because it was equal to the judgment entered in favor of Mr. Hill?

## III. Motion for Judgment in Accordance with a Motion for Directed Verdict
### A. Standard of Review

Our review of a trial court's decision regarding a post-trial motion for entry of judgment in accordance with a motion for a directed verdict is gauged by the standard applicable to motions for a directed verdict. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). Directed verdicts are appropriate only when reasonable minds cannot differ as to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Ingram v. Earthman*, 993 S.W.2d 611, 627 (Tenn. Ct. App.1998). A case should not be taken away from the jury,

_____

[2] We note that these issues were properly raised in Mr. Hill's Motion for Judgment in Accordance with a Motion for Directed Verdict or, in the alternative, for a New Trial. *See* Tenn. R. App. P. 3(e) (requiring that issues on appeal from a jury verdict be specifically raised in a motion for new trial).

even when the facts are undisputed, if reasonable persons could draw different conclusions from the facts. *Gulf, M. & O.R. Co. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

In appeals from a directed verdict, reviewing courts do not weigh the evidence, *Conatser v. Clarksville Coca–Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638–39 (Tenn. Ct. App. 1993). Instead, they review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999). A trial court may, however, direct a verdict with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's.

## B. Analysis

Mr. Hill first argues that a directed verdict on the issue of the causation of Mr. Hill's medical issues was proper because it was undisputed in the record that Mr. Hill's surgery and medical treatment was causally related to the accident. Respectfully, we disagree.

According to Mr. Hill, both medical experts testified that Mr. Hill's existing spinal stenosis was aggravated by the accident. We agree. In his deposition testimony, Mr. Hampf clearly stated that "based on the records, it sounds like [the spinal stenosis] was aggravated by the accident." When asked whether he agreed with Dr. Hampf's conclusion above, Dr. Dixit responded affirmatively. However, in a later portion of Dr. Hampf's testimony, Dr. Hampf testified as follows:

> Q.   Doctor, let me close with this, Dr. Hampf. You cannot tell this jury to a reasonable degree of medical certainty that the treatment you provided to this man, I am including your office visits, the physical therapy, that you sent him to, the epidural injections that he had or the surgery, are causally related to the vehicle accident of September 9, 2008 based upon the patient's own history; is that correct?
>
> A.   No, I would not relate it to the motor vehicle accident.

The evidence in the record shows that the history provided to Dr. Hampf by Mr. Hill included the fact that the pain had only begun one month prior to the visit, but after the accident at issue. Specifically, Mr. Hill's Questionnaire, which was completed by Mr. Hill and his wife at Dr. Hampf's office, stated that his pain had only begun one month prior and that the symptoms were "accident related." Further, Dr. Hampf's notes indicated that Mr. Hill informed Dr. Hampf that Mr. Hill reported "no prior difficulty with his back." Dr. Hampf also testified that he was aware that the hip pain "started in the accident" because Mr. Hill informed him that "he was in an accident back in September."

This Court has previously considered the directed verdict standard when faced with conflicting evidence from the same expert witness. In *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897 (Tenn. Ct. App. 2001), this Court stated:

> [W]e have before us expert testimony that tends to establish causation on the one hand, and other testimony by the same experts that tends to diminish the effect of their causation testimony. In our judgment, the latter testimony goes to the weight to be given the former testimony. We believe it was for the jury to sort all of this out.
>
> It is unreasonable to expect a medical expert to testify with legal precision. This is not to say that his or her testimony does not have to meet a certain standard; clearly . . . it does. But such testimony must be viewed as the testimony of a medical person and not that of an individual trained in the law. We are expecting too much if we think that doctors can speak with the precision of a hornbook on causation.

*Id.* at 905. Likewise, in this case, Dr. Hampf's testimony first tends to establish causation, then tends to weaken that conclusion. As previously discussed, this Court is to review the evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d at 271; *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999). As such, disregarding Dr. Hampf's prior testimony regarding aggravation, as well as Dr. Dixit's testimony, and giving the Appellees all reasonable inferences, we conclude that Dr. Hampf's statements above created a genuine issue as to whether the medical expenses incurred by Mr. Hill for the treatment of his spinal stenosis were causally related to the accident at issue in this case. Given the minimal evidentiary requirements presented in review of motions for

judgment in accordance with a motion for a directed verdict, we must conclude that this testimony presented sufficient evidence of causation to submit to a jury.

Mr. Hill argues, however, that the entirety of Dr. Hampf's testimony should be stricken from consideration because it is vague, contradictory, and unclear. "Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out." ***Church v. Perales***, 39 S.W.3d 149, 169–70 (Tenn. Ct. App. 2000) (citing ***State v. Matthews***, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993)); *see also* ***Helderman v. Smolin***, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005). "If determined by the trial court to be contradictory, the statements by the witness are considered to be 'no evidence' of the fact sought to be proved." ***Helderman***, 179 S.W.3d at 501 (quoting ***Wilson v. Patterson***, 73 S.W.3d 95, 103–04 (Tenn. Ct. App. 2001)). This Court recently explained the long-standing policy behind the cancellation rule, stating:

> If parties in court were permitted to assume inconsistent positions in the trial of their cause, the usefulness of courts of justice would in most cases be paralyzed. The coercive powers of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come in or are brought before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose.

***Helderman***, 179 S.W.3d at 501–02 (quoting ***Stamper v. Venable***, 117 Tenn. 557, 97 S.W. 812, 813 (Tenn. 1906)). The cancellation rule only applies, however, "when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence." ***Taylor v. Nashville Banner Publ'g Co.***, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978). As our supreme court has stated,

> The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to

-7-

prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.

*Johnston v. Cincinnati N.O. & T.P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429, 436 (1922)).

*Tennessee Law of Evidence* further explains the cancellation rule, stating:

> A number of Tennessee decisions adopt a rule that contradictory statements by a witness on the same fact cancel each other and therefore amount to no evidence of that fact. Although not technically a rule of evidence, this rule can have a significant impact on a case and merits attentions.
>
> * * *
>
> It should be noted that this rule is actually more narrow than it would appear to be. No sensible decision holds that a witness's testimony on a fact is automatically discounted simply because the witness contradicted himself or herself on that fact. Rather, the court assesses whether there is an explanation for the inconsistency and whether either version is corroborated by other evidence. The courts recognize that testimony may have value even though it has been both affirmed and denied if the contradiction is explained and shown to be the product of misunderstanding or inadvertence.
>
> The explanation can take many forms. For example, one deponent in one deposition denied repeating a rumor, then admitted the repetition in a second deposition a year later. The court held the cancellation rule did not apply because the deponent had refreshed his recollection in the interim between the two depositions. In another case, a witness who had given contradictory statements prior to trial explained in his testimony that he had been threatened and therefore felt he had to exonerate the defendants when making his earlier statements, which were untrue.
>
> Corroboration of one version is also frequently found, thereby blocking the cancellation rule. Often it consists of the testimony of another witness.

Cohen, *et al.*, *Tennessee Law of Evidence* § 6.07[5] (footnotes omitted).

We conclude, however, that the cancellation rule is not applicable to exclude the testimony at issue.[3] As explained by this Court in **Helderman v. Smolin**, 179 S.W.3d 493 (Tenn. Ct. App. 2005):

> When the testimony of a witness is susceptible of multiple interpretations, one of which would produce no inconsistency, we are reluctant to apply the "cancellation rule". *See* **Gambill v. Middle Tenn. Med. Ctr.**, Inc., 751 S.W.2d 145, 151 (Tenn. Ct. App. 1988). Instead, "the meaning of relevant oral statements made by or to a party . . . is a fact question for a jury to consider in weighing the possible contradictions in and credibility of the testimony of the witness, rather than a law question for determination by the Trial Judge on motion for summary judgment or directed verdict." (citing **Ark. River Packet Co., v.**

---

[3] We note that it is difficult to determine whether Mr. Hill objected to the admission of Dr. Hampf's testimony on grounds of the cancellation rule prior to his motion for directed verdict at the close of proof. Nothing in the record suggests that he did. It is axiomatic that issues are considered waived on appeal by the failure to present them at trial. *See* **ABN AMRO Mortg. Group, Inc. v. Southern Sec. Federal Credit Union**, No. W2011-00693-COA-R3CV, 2011 WL 5590320, at *4 (Tenn. Ct. App. Nov. 17, 2011) (citing **Waters v. Farr**, 291 S.W.3d 873, 918 (Tenn. 2009)). The fact that the issue is raised during a post-trial motion will not prevent the court from discerning a waiver, if the issue was not raised in a contemporaneous objection or pre-trial motion. *See* **State v. Robert Lee Mallard**, No. M1999–00336–CCA–R3–CD, 1999 WL 1209523, at *1 (Tenn. Crim. App. Dec. 17, 1999). Indeed, the Tennessee Supreme Court previously considered the cancellation rule with regard to testimony admitted at trial, only after the party seeking to exclude the evidence made a contemporaneous motion to strike the purportedly conflicting testimony. *See* **Davis v. McGuigan,** 325 S.W.3d 149, 157 n.3 (Tenn. 2010); *see also* **Helderman v. Smolin**, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005) (considering the cancellation rule after a motion to strike the testimony was lodged). However, the record does contain some indication that this issue of Dr. Hampf's testimony was considered by the Court: in the transcript of the trial, the trial court ruled that the entirety of Dr. Hampf's deposition should be read to the jury, except those portions previously stricken. The trial court does not elaborate as to what portions of Dr. Hampf's testimony were objectionable, or to which party. To show that this argument was previously raised, Mr. Hill cites his own post-trial motion in which he states that the trial court made a statement at a pre-trial conference that the testimony was contradictory. The trial court's oral rulings at the pre-trial conference are not contained in the record, nor is a copy of any written motion regarding this issue. Instead, the only evidence of the statement is Mr. Hill's post-trial motion. However, "mere statements of counsel are not evidence." **Metro. Gov't of Nashville & Davidson Co. v. Shacklett**, 554 S.W.2d 601, 605 (Tenn. 1977). Given the fact that the record supports a determination that the admission of Dr. Hampf's deposition testimony was argued in the trial court, we decline to conclude that issue was waived based on the particular circumstances of this case. However, we caution litigants that we may not be so accommodating and choose to do the same in the future.

> *Hobbs*, 105 Tenn. 29, 58 S.W. 278 (1900)); *see also* ***Ledford v.***
> ***Francis***, 1988 WL 132686, at *4–5, 1988 Tenn.App. LEXIS
> 813, at *13–14 (Tenn. Ct. App. Dec.14, 1999).

***Helderman***, 179 S.W.3d at 505. In this case, we must conclude that the purportedly conflicting statements are not necessarily inconsistent. Because the statements are not irreconcilably inconsistent, the trial court properly left for the jury the task of "weighing the possible contradictions in and credibility of the testimony of the witness." ***Id.*** (citing ***Ark.***
***River Packet***, 58 S.W. 278).

The case-at-bar is similar to the recent case of ***Jacobs v. Nashville Ear, Nose &***
***Throat Clinic***, 338 S.W.3d 466 (Tenn. Ct. App. 2010), which reversed the trial court's refusal to consider, at the summary judgment stage, the statements of a medical expert, partially due to the trial court's ruling that the testimony were barred from consideration by the cancellation rule. In his affidavit, the medical expert stated that the decedent would have had a 51% or better chance of survival if he had been promptly diagnosed and treated.  The expert repeated this opinion in his deposition. ***Id.*** at 483–84. However in later deposition testimony, the expert testified that  his "best estimate" as a person that performs these type surgeries was that "depending on the radiology interpretations in 2000, again, how much of the dura was really involved or not involved, that he did lose somewhere between a 20 and 50 percent chance of being alive five years later." ***Id.*** at 484. The Court of Appeals noted, however, that the expert's later testimony was prompted by a different question than the earlier testimony and specifically involved a hypothetical situation that the expert did not believe was present in the decedent's situation. The Court of Appeals concluded that the trial court erred in applying the cancellation rule to this testimony. The Court noted that medical doctors are not trained in the law and are not expected to "speak with the precision of a hornbook on causation." ***Miller***, 73 S.W.3d at 905. Additionally, the Court noted that other expert testimony corroborated his position that the decedent had a better than 51% chance of survival. Finally, the Court cited ***Gambill v. Middle Tenn. Med. Center***, 751 S.W.2d 145 (Tenn. Ct. App. 1988), for the proposition that "there should not be a dismissal for inconsistency in testimony of a witness unless it represents an unequivocal and irreconcilable conflict." ***Id.*** at 151–52.  The Court concluded that given the differing questions posed by the questioning attorney, including the addition of a hypothetical that the expert did not accept in the later deposition testimony, there was not an unequivocal conflict justifying application of the cancellation rule.

The testimony in this case is similar to the testimony in ***Jacobs***. Here, as in ***Jacobs***, Dr. Hampf gave seemingly conflicting testimony as to whether the accident had any effect on Mr. Hill's pre-existing condition. However, Dr. Hampf's responses were prompted by two very different questions. First, Dr. Hampf was asked whether "the accident . . . caused his

spinal stenosis to be aggravated." Dr. Hampf responded in the affirmative, based on Mr. Hill's patient records. Later in his deposition, Dr. Hampf was asked whether the treatment that Mr. Hill received for his spinal stenosis was "causally related" to the accident, based on the history given by Mr. Hill. Dr. Hampf responded that it was not. We see no conflict in Dr. Hampf's testimony because, like the expert in *Jacobs*, the premise upon which Dr. Hampf was answering changed from the earlier testimony to the later testimony. Indeed, the questions posed by counsel at Dr. Hampf's deposition seek two different pieces of information. The first question seeks to know whether it is Dr. Hampf's professional opinion that Mr. Hill's pre-existing condition was adversely effected by the accident. The second question, however, seeks to determine whether it is Dr. Hampf's professional opinion that the treatment Mr. Hill received for his pre-existing condition was caused by the injuries he sustained in the accident. The fact that Mr. Hill's condition was aggravated by the accident, does not, *ipso facto*, require a finding that his treatment for the pre-existing condition was due to the accident. Accordingly, we see no conflict. Further, the parameters of each question differed significantly. In the first question, Dr. Hampf gave his opinion based on Mr. Hill's records. In the second questions, his opinion was confined to Mr. Hill's own history. Given the dissimilarities between the two questions, we conclude that the testimony is "susceptible of multiple interpretations, one of which would produce no inconsistency." Thus, like the *Jacobs* case, "[i]t is for the jury to decide whether or not to believe [the expert's] conclusion[.]" *Jacobs*, 338 S.W.3d at 484.

However, even if we were to conclude that there exists an inconsistency between Dr. Hampf's two statements, one of his statements is corroborated by the testimony of Dr. Dixit. Indeed, Dr. Dixit testified that he agreed with Dr. Hampf's conclusion that Mr. Hill's spinal stenosis was aggravated by the accident. As previously explained, "[t]he cancellation rule only applies, 'when the inconsistency in the witness's testimony is unexplained and when *neither* version of his testimony is corroborated by other evidence.'" *Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978) (emphasis added). Because at least one version of Dr. Hampf's expert opinion is corroborated, the cancellation rule is inapplicable. In addition, Dr. Hampf's testimony that Mr. Hill's treatment was not "causally related" to the accident is corroborated by Mr. Hill's own admission. In the Questionnaire, Mr. Hill stated that the pain throughout his leg and hip had begun "approximately one month" prior to his first appointment with Dr. Hampf, which occurred in late December. However, the accident occurred in early September, nearly three months from the time Mr. Hill stated that his symptoms had begun. Thus, some evidence suggests that Mr. Hill's symptoms, and their subsequent treatment, were not causally related to the accident because of the gap in time between the accident and when Mr. Hill stated he began experiencing symptoms. While Mr. Hill is undisputedly not an expert on spinal stenosis, the jury is not required to accept expert testimony to the exclusion of all other evidence, including lay testimony. *State v. Nesbit*, 978 S.W.2d 872, 886 (Tenn. 1998). Because both versions of the

purportedly conflicting testimony are corroborated by other competent testimony, the cancellation rule cannot apply to exclude any of the testimony. Instead, the issue of the weight to be given to each witness's testimony is an issue properly left to the jury.

Given that Dr. Hampf's testimony was properly admitted and considered by the jury, we must conclude that the trial court properly denied both the motion for directed verdict and the motion for judgment in accordance with the motion for directed verdict. In this case, there was conflicting testimony as to whether the treatment Mr. Hill received for his spinal stenosis was casually related to the accident. Therefore, the trial court properly allowed the issue to go to the jury.

### IV. Discretionary Costs
### A. Timing

The Estate next argues that the trial court erred in awarding discretionary costs to Mr. Hill in this case because the motion for discretionary costs was filed outside of the time limit allowed by Rule 54.04(2) of Tennessee Rules of Civil Procedure. Review of the trial court's interpretation of Rule 54.02 is a question of law, and our review is *de novo*, without a presumption of correctness. *Estate of Burkes ex rel. C.T.A. v. St. Peter Villa, Inc.*, No. W2006-02497-COA-R3-CV, 2007 WL 2634851, at * 3 (Tenn. Ct. App. Sept. 12, 2007) (citing *Lacy v. Cox*, 152 S .W.3d 480, 483 (Tenn. 2004); *Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003))*.* Rule 54.02 provides, in relevant part:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. . . .

The judgment of the jury was entered on November 10, 2011. Mr. Hill timely filed his Motion for Judgment in Accordance with the Motion for Directed Verdict, or in the Alternative for New Trial on December 2, 2011. The trial court denied the motion on January 3, 2012. Mr. Hill then filed his motion for discretionary costs on February 2, 2012.  Both

Appellees objected to the motion, arguing, *inter alia*, that Mr. Hill's motion was time-barred because it was not filed within thirty days after the entry of the jury verdict. The trial court granted the motion for discretionary costs, finding that it was properly filed within thirty days of the order denying the motion for new trial. Thus, the question on appeal is whether the phrase "within thirty (30) days after entry of judgment" in Rule 54.04 refers to the denial of a post-trial motion, or merely the entry of the jury verdict in this case.

Appellees cite to the Eastern Section case of **Vaughn v. Cunningham**, No. E2004-03001-COA-R3-CV, 2006 WL 16321 (Tenn. Ct. App. Jan. 4, 2006), which held that a motion for a new trial did not toll the limitations period for filing a motion for discretionary costs. In so holding, the Eastern Section cited the plain language of Rule 54.04 requiring that the motion be filed thirty days from "entry of judgment." The Eastern Section explained that:

> The phrase 'entry of judgment' is defined in Tenn. R. Civ. P. 58 as:
>
> > Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
> >
> > (1) the signatures of the judge and all parties or counsel, or
> > (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
> > (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.
> > When requested by counsel or pro se parties, the clerk shall mail or deliver a copy of the entered judgment to all parties or counsel within five days after entry; notwithstanding any rule of civil or appellate procedure to the contrary, time periods for post-trial motions or a notice of appeal shall not begin to run until the date of such requested mailing or delivery. . . .
>
> Tenn. R. Civ. P. 58.

-13-

*Cunningham*, 2006 WL 16321, at *14–15. Respectfully, from our reading, Rule 58 does not define what constitutes an "entry of judgment," but merely outlines when that entry becomes "effective." Indeed, the advisory committee comment to the rule states that Rule 58 "is designed to make uniform across the State the procedure for the entry of judgment and to make certain the effective date of a judgment." In fact, advisory committee comments to the amendments to Rule 58 make clear that the rule applies not only to final judgments disposing of a case, at which time discretionary costs become relevant, but also to "other action[s]," as well as "order[s] or decree[s]." Additionally, from our research, no courts of either the Eastern, Middle or Western Section have cited and followed the rule expressed in *Cunningham*.

Instead, courts in the Western Section have traditionally followed the rule that a timely filed post-trial motion tolls the time for filing a motion for discretionary costs. *See **The Alison Group, Inc. v. Ericson***, 181 S.W.3d 670, 676 n.6 (Tenn. Ct. App. 2005) (finding that a motion for discretionary costs filed prior to "a final order on Appellants' [motion for new trial]" was timely filed.), *app. perm. appeal denied* Oct. 24, 2005; ***Dulin v. Dulin***, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *7 (Tenn. Ct. App. Sept. 3, 2003) (stating: "Thus, in accordance with our decision in ***Ashford***, we find Mother's motion [for discretionary costs] was timely filed."), no app. perm. appeal filed. As explained by this Court in ***Ashford v. Benjamin***, No. 02A01-9311-CV-00243, 1994 WL 677607 (Tenn. Ct. App. Dec. 6, 1994):

> Once a motion for new trial is filed, the judgment is suspended and prevented from becoming final pending disposition of the motion. ***Thompson v. Hawes***, 162 S.W.2d 71, 78 (Tenn. Ct. App. 1941). The trial court's jurisdiction is preserved. ***Green Meadow Park, Inc. v. American Heritage Life Ins. Co.***, 540 S.W.2d 267, 270 (Tenn. Ct. App. 1976). Furthermore, for the purposes of appeal, the judgment is regarded as entered at the time the motion for new trial is overruled. ***Green Meadow***, 540 S.W.2d at 270. Rule 54.01 T.R.C.P. provides that a " '[j]udgment' as used in these rules includes a decree and any order from which an appeal lies.

*Ashford*, 1994 WL 677607, at *2. We are not persuaded by the reasoning in ***Cunningham*** and, instead, agree with the rule expressed by the ***Ashford*** Court that the better practice is to consider timely motions for discretionary costs filed within thirty (30) days of the entry of judgment on any post-trial motions. It is undisputed in this case that Mr. Hill's motion for discretionary costs was filed within thirty (30) days of the denial of his post-trial motion. Thus, we affirm the trial court's ruling that the motion was timely filed.

## B. Evidentiary Support for Award of Discretionary Costs

Appellees finally argue that the trial court erred in awarding discretionary costs to Mr. Hill in an amount equal to the compensatory damages awarded by the jury. When determining whether to award discretionary costs, trial courts are directed to:

> (1) determine whether the party requesting the costs is the "prevailing party;" (2) limit awards to the costs specifically identified in the rule; (3) determine whether the requested costs are necessary and reasonable; and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled.

*Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002).

Parties are not entitled to costs under Tennessee Rule of Civil Procedure 54.04(2) simply because they prevail at trial. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998). The particular equities of the case may influence a trial court's decision about these costs. *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992); *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000). "However, the courts should, as a general matter, award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion." *Massachusetts Mut. Life Ins. Co.*, 104 S.W.3d at 35 (citing *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 85 (Tenn. Ct. App. 2000)). The award of discretionary costs, like the award of other costs, is within the trial court's reasonable discretion. *Perdue* 837 S.W.2d at 60. "The 'abuse of discretion' standard of review calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App.2002) (citations omitted). The abuse of discretion standard does not permit this Court to second-guess the lower court's judgment or merely substitute an alternative we prefer. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citation omitted). We must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn .2001) (citations omitted). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249–50 (Tenn. 2010) (citation omitted). A trial court also abuses its discretion if it strays beyond the applicable legal standards or when it fails to properly consider the factors that customarily guide a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citation omitted).

The Estate first contends that Mr. Hill failed to "adequately and properly support its motion under Rule 54.02" because he filed no declaration under penalty of perjury and no affidavit. This issue was previously considered by this Court in **_Roberts v. Bridges_**, No. M2010-01356-COA-R3-CV, 2011 WL 1884614 (Tenn. Ct. App. May 17, 2011), which explained:

> The burden to satisfy the requisites of Rule 54.04(2) rests with the prevailing party. **_Stalsworth v. Grummons_**, 36 S.W.3d 832, 835–36 (Tenn. Ct. App. 2000) (citing **_Miles v. Voss Health Care Ctr._**, 896 S.W.2d 773, 776 (Tenn. 1995))
>
> > As a general matter, a party seeking discretionary costs can carry its burden by filing a timely and properly supported motion demonstrating (1) that it is the prevailing party, (2) that the costs being sought are included in Tenn. R. Civ. P. 54.04(2), (3) that the costs are necessary and reasonable, and (4) that it has not engaged in conduct during the litigation that would justify depriving it of the costs it is requesting.
>
> **_Duran v. Hyundai Motor Am., Inc._**, 271 S.W.3d 178, 215 (Tenn. Ct. App.2008) (citations omitted). "Once the prevailing party has filed a timely and properly supported motion for discretionary costs, the nonmovant may challenge the motion by presenting argument and evidence contesting, inter alia, the reasonableness and necessity of the fees." **_Stalsworth_**, 36 S.W.3d at 836.
>
> This Court has stated that a prevailing party, as a general matter, "must file a timely motion and must support this motion with an affidavit detailing these costs, verifying that they are accurate and that they have actually been charged, and that they are necessary and reasonable." **_Mass. Mut. Life Ins. Co. v. Jefferson_**, 104 S.W.3d 13, 36 (Tenn. Ct. App. 2002). This language, however, "does not make affidavits mandatory, it simply describes the generally followed, and preferable, practice used to support such motions." **_Kendall v. Cook_**, E2005-02763-COA-R3-CV, 2006 WL 3501325, at *2 (Tenn. Ct. App. Dec. 6, 2006). Indeed, the plain language of Rule 54.04(2) requires only

that "a party requesting discretionary costs . . . file and serve a motion within thirty (30) days after entry of judgment." Tenn. R. Civ. P. 54.04(2). It does not expressly require a prevailing party to support its motion with an affidavit. *Pesce v. E. Tenn. Const. Servs., Inc.*, No. E2010-01071-COA-R3-CV, 2011 WL 684549, at *10 (Tenn. Ct. App. Feb. 28, 2011). All that the case law requires is a "properly supported" motion permitting the trial court to determine whether the requested costs are reasonable and necessary.

"An affidavit is the preferable method for the prevailing party to satisfy its burden of proof," but it is not the only method. *Kendall*, 2006 WL 3501325, at *2. This Court has previously found the submission of invoices detailing the requested costs sufficient to satisfy the prevailing party's burden where the Rule 54.04(2) motion also included a declaration under the penalty of perjury. *Id.* at *2–3; *see also Stalsworth*, 36 S.W.3d at 836 n. 5 (stating in a footnote that the "filing of a motion supported by invoices from the doctors who charged a fee for reserving their time shifted the burden" to the opposing party). It is not entirely clear why a party would run the risk associated with filing anything other than an affidavit, but we nevertheless conclude the filing of a verified motion supported by detailed invoices in this case was sufficient to shift the burden to Homeowners to present evidence and argument challenging the requested costs. The trial court therefore did not abuse its discretion in considering Neighbors' Rule 54.04(2) motion.

*Roberts*, 2011 WL 1884614, at *11 (footnote omitted). Thus, the *Roberts* Court held that a motion for discretionary costs may still be "properly supported," even without the filing of an affidavit, if the motion is supported by invoices and includes a "declaration under penalty of perjury." *Id.* at *11. In this case, Mr. Hill's motion was not supported by a declaration under penalty of perjury. Instead, the motion was only signed by Mr. Hill's counsel and contained invoices regarding some of the expenses incurred as a result of this litigation. At trial, however, counsel for the Estate failed to object to Mr. Hill's motion on the ground that the motion lacked a declaration under penalty of perjury, either in its written response to Mr. Hill's motion, or orally at the hearing on the discretionary costs issue. Instead, counsel for the Estate merely pointed out that no affidavit was filed along with the motion, but conceded that:

-17-

The Rule no longer says you have to have an affidavit , but the cases say the preferable way is to have the lawyer's affidavit detailing what was paid out that fits the categories of the Rule. That has not been done here. That's their burden, not our burden.

Nowhere in the transcript does counsel for the Estate mention that the motion contains no declaration under penalty of perjury, nor did the Estate argue that Mr. Hill's failure to include such a declaration should prevent the trial court from considering the merits of his motion. As previously stated, issues are considered waived on appeal by the failure to present them at trial. *See ABN AMRO Mortg. Group, Inc. v. Southern Sec. Federal Credit Union*, No. W2011-00693-COA-R3CV, 2011 WL 5590320, at *4 (Tenn. Ct. App. Nov. 17, 2011) (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009)). Given the Estate's failure to properly raise the issue of the lack of a declaration to the trial court, we conclude that the trial court in this case did not abuse its discretion in considering the merits of Mr. Hill's motion for discretionary costs.

The Estate next argues that the trial court erred in awarding $5,686.55 in discretionary costs to Mr. Hill because the amounts sought were in excess of the amounts documented in the invoices attached to Mr. Hill's motion. We have reviewed the allegations contained in the Estate's brief and conclude that it is correct that certain charges were overestimated by Mr. Hill in his motion for discretionary costs. From our review of the record, the invoices submitted contemporaneously with Mr. Hill's motion for discretionary costs support the Estate's contention that Mr. Hill proved only $2,953.25 in discretionary costs. After thoroughly reviewing the record, we conclude that all other costs were either not proved by invoices or are properly excluded from an award of discretionary costs. Included in the invoices are several charges for "conferences" and the preparation of the expert witnesses. Other charges do not clearly distinguish between preparation and testimony of expert witnesses. The Tennessee Supreme Court has clearly held that costs associated with the preparation of expert witnesses for testimony are not recoverable discretionary costs. *See Miles v. Marshall C. Voss Health Care Center*, 896 S.W.2d 773, 776 (Tenn. 1995). Accordingly, these costs are excluded from our calculations. Other purported costs are completely unsupported by invoices.

Mr. Hill argues, however, that Dr. Dixit's expert fees were supported by evidence in the record, specifically, Dr. Dixit's own testimony that of the $4,525.00 he charged Mr. Hill for his testimony, $4,000.00 comprised his fee for testimony and deposition. Only the remaining $525.00 was allocated to preparation. Dr. Dixit's testimony on this issue was uncontroverted. Although the Estate argues that no competent evidence supports this charge, Dr. Dixit's sworn testimony regarding his own fee is clearly competent evidence on this issue.

The Estate cites no authority that states that a trial court abuses its discretion by considering testimony at trial in awarding discretionary costs. We are reluctant to hold that a trial court must disregard competent evidence submitted at trial regarding costs in favor of only reviewing the evidence attached to a motion for discretionary costs. Thus, considering the testimony of Dr. Dixit, as well as the discretionary costs shown via invoice, the record supports an award of discretionary costs of $6,953.25. We will not find an abuse of discretion where the trial court's ruling was in the range of acceptable alternatives. *Bronson v. Umphries*, 138 S.W.3d 844, 851 (Tenn. Ct. App. 2003) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). Thus, it was not an abuse of discretion for the trial court to award to Mr. Hill $5,685.55 for discretionary costs.

In his reply brief, Mr. Hill goes further to argue that the trial court abused its discretion in failing to award him a greater amount as discretionary costs. Mr. Hill raises this argument for the first time in his reply brief. However, "it is not the office of a reply brief to raise issues on appeal." *Gentry v. Gentry*, No. E2000-02714-COA-R3-CV, 2001 WL 839714, at *4 n.3 (Tenn. Ct. App. 2001). Accordingly, we decline to address his argument on appeal.

## V. Conclusion

The judgment of the Circuit Court for Davidson County is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are taxed one-half to Appellant Norman Hill, and his surety, and one-half to Appellees  Estate of Norma Aguila, Danny Tapia, Jr., and Ameritrans/Broyler Equipment d/b/a Tabet Enterprises, for all of which execution may issue, if necessary.

_____

J. STEVEN STAFFORD, JUDGE